## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

ADAM BENGHARSA,
an individual,

                                          Case No.:

      Plaintiff,

v.

PENNSYLVANIA HIGHER
EDUCATION ASSISTANCE
AGENCY, INC., d/b/a
AMERICAN EDUCATION
SERVICES,
a foreign not for profit corporation, and
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation,

      Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, ADAM BENGHARSA ("Plaintiff"), by and through the undersigned counsel, and hereby sue Defendants, PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, INC., d/b/a AMERICAN EDUCATION SERVICES (hereinafter, "AES") and EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for AES's violations of the Fair Credit Reporting Act, 15 United States Code, Section

1681 *et seq.* (hereinafter, the "FCRA") wherein AES improperly credit-reported and subsequently verified its credit reporting of four (4) student loan accounts (hereinafter, the "Accounts") on Plaintiff's consumer credit reports and in Plaintiff's consumer credit files as maintained by Experian.  More specifically, despite Plaintiff never missing any payments on the Accounts and despite Plaintiff making each required payment on time, Defendants reported the Accounts with the comments "credit grantor cannot locate consumer," "creditor cannot locate consumer," "creditor cannot locate individual," or "potentially negative" resulting in the Accounts being reported as negative, adverse, and/or derogatory tradeline Accounts on Plaintiff's Experian reports and damaging Plaintiff's credit scores and credit reputation.

2.      Despite Plaintiff repeatedly advising AES of its errors and repeatedly disputing AES's reporting of such erroneous information directly to Experian, AES *continued* to report the Accounts with negative information in violation of the FCRA before ultimately removing its notations that AES could not locate Plaintiff with respect to the Accounts.

3.      Furthermore, this is an action for damages for Experian's violations of the FCRA wherein Experian continued to incorrectly report the Accounts with negative information after Plaintiff repeatedly disputed to Experian and advised Experian that such reporting was false and inaccurate.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq.*, 12

United States Code, Section 2605 *et seq*.

5.      Defendants are both subject to the jurisdiction of this Court as Defendants each regularly conduct business in this District.

6.      Venue is proper in this District as the acts and communications described herein occur in this District.

7.      At all material times herein, Plaintiff is a natural person residing in Miami-Dade County, Florida.

8.      At all material times herein, AES is not for profit corporation existing under the laws of the state of Pennsylvania with its principal place of business located at 1200 N 7th Street, Harrisburg, Pennsylvania 17102-1419.

9.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

## GENERAL ALLEGATIONS

10.     At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because he is an individual and allegedly obligated to pay a debt.

11.     At all material times herein, AES, itself and through its subsidiaries, regularly services student loans owed or allegedly owed by consumers residing in Miami-Dade County, Florida.

12.     At all material times herein, AES is a "person" who furnishes information to credit reporting agencies—specifically Experian—as provided in the

FCRA and as defined by 15 United States Code, Section 1681s-2.

13.    At all material times herein, AES furnishes information to the credit reporting agencies concerning Plaintiff's four (4) student loan accounts referenced by account numbers beginning 4073- (the "Accounts").

14.    At all material times herein, AES furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

15.    At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.   Experian disburses such consumer reports to third parties under contract for monetary compensation.

16.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

17.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

4

**DEFENDANTS' CREDIT
REPORTING OF THE ACCOUNTS
AND PLAINTIFF'S DISPUTES TO DEFENDANTS UNDER THE FCRA**

18.     Prior to May 27, 2021, Plaintiff applied for a Discover Bank credit card.

19.     On or about May 27, 2021, Discover Bank sent a letter to Plaintiff advising that Discover Bank denied Plaintiff's credit application after reviewing Plaintiff's Experian credit report due to a "Charged Off" account appearing on Plaintiff's Experian credit report.

20.     In or around June 2021, Plaintiff obtained a copy of his Experian credit report.

21.     Notably, Plaintiff's Experian credit report as of June 2021 did not include any tradeline accounts reported as being charged-off.

22.     However, Plaintiff's Experian report as of June 2021 did show four (4) Accounts reported by AES as "POTENTIALLY NEGATIVE." The only negative or adverse information reported by AES and Experian with respect to the four (4) Accounts was a comment that AES could not locate Plaintiff.

23.     Plaintiff's Experian credit report as of June 2021 did not include any negative, derogatory, or adverse tradeline account information other than the comments reported by AES and Experian on the Accounts.

24.     AES and Experian falsely reported that Plaintiff could not be located despite Plaintiff residing in the Miami area while attending the University of Miami. Plaintiff never permanently left the Miami area and was easily locatable.

25.     To the extent that Defendants contend Plaintiff was unable to be located,

such contention is misleading as Plaintiff made timely payments and was never late on the Accounts, and therefore AES had no valid reason to report that AES could not contact Plaintiff.

26.    Based on information and knowledge, Discover Bank denied Plaintiff's credit card application based on AES and Experian reporting that AES could not locate Plaintiff.   Again, there was on other negative, derogatory, or adverse information on Plaintiff's Experian credit reports at the time Discover Bank denied Plaintiff's credit application.

27.    After learning of AES's and Experian's reporting of the Accounts on Plaintiff's Experian reports in May 2021 or June 2021, Plaintiff subsequently disputed Experian's reporting of the Accounts (hereinafter, "June 2021 Dispute").

28.    Plaintiff's June 2021 Dispute advised Defendants that Plaintiff identified errors, inaccuracies, and misleading information on his credit reports and in his credit files, specifically, information reported by Defendants with respect to Plaintiff's AES Accounts.

29.    Experian communicated Plaintiff's June 2021 Dispute to AES including but not limited to Plaintiff's contact information.

30.    AES received Plaintiff's June 2021Dispute from Experian.

31.    To the extent AES did not possess Plaintiff's contact information as of the date of Plaintiff's June 2021Dispute, AES could have easily obtained Plaintiff's contact information through the dispute process, including but not limited to information supplied to AES by Plaintiff and Experian regarding Plaintiff's June

2021Dispute.

32.     Additionally, after learning of AES's and Experian's negative reporting, Plaintiff contacted AES directly and disputed AES's reporting of the Accounts.

33.     As such, to the extent AES had not previously been able to reach or locate Plaintiff, AES possessed knowledge of Plaintiff's location and possessed the ability to contact Plaintiff.

34.     On or about June 25, 2021, Experian sent a letter to Plaintiff in response to Plaintiff's June 2021Dispute.  Please see attached true and correct copies of relevant pages from Experian's dispute response labeled as Exhibit "A."

35.     Despite Plaintiff's June 2021 Dispute and despite AES clearly possessing knowledge of Plaintiff's location and possessing the ability to contact Plaintiff, AES and Experian purportedly verified their reporting of the Accounts and continued to report all four (4) of the Accounts with the status comment "Creditor cannot locate individual/Never late."  *See* Ex. A.

36.     On or about June 26, 2021, Plaintiff obtained another copy of his credit report from Experian.  Please see attached true and correct copies of relevant pages from said Experian report labeled as Exhibit "B."

37.     Notably, while the summary page of Plaintiff's Experian report shows four (4) "Accounts ever late," Plaintiff's Experian report does not specifically show any accounts with late payment information.

38.     As of June 26, 2021, AES and Experian still reported the Accounts with the comment "Credit grantor cannot locate consumer" and reported three (3) of the

four (4) tradeline accounts as being closed despite all four (4) accounts still being open and actively paid.

39.     Such reporting is incorrect as Plaintiff was never late on the Accounts and the Accounts were all open as of June 2021.

40.     In July 2021, Plaintiff repeatedly disputed Defendants' reporting of the Accounts to both Experian and AES ("July 2021 Disputes").

41.     Plaintiff's July 2021 Disputes advised Defendants that Plaintiff identified errors, inaccuracies, and misleading information on his credit reports and in his credit files, specifically, information reported by Defendants with respect to Plaintiff's AES Accounts.

42.     Experian communicated Plaintiff's July 2021 Disputes to AES.

43.     AES received Plaintiff's July 2021 Disputes from Experian.

44.     Despite receiving Plaintiff's July 2021 Disputes, Experian purportedly verified the disputed information with AES and continued to report the inaccurate and incomplete information on Plaintiff's credit reports and credit files.

45.     More specifically, Experian sent letters to Plaintiff in response to his July 2021 Disputes dated July 15, 2021 and July 27, 2021.  Please see attached true and correct copies of Experian's letter dated July 15, 2021 attached as Exhibit "C" and Experian's letter dated July 27, 2021 attached as Exhibit "D."

46.     Despite Plaintiff's disputes, Defendants failed to change their reporting of the Account and instead continued to report a status of "Creditor cannot locate individual/Never late" for the Accounts.

8

47.    Such reporting of the Accounts is erroneous and incorrect and there should be no negative or derogatory information regarding the Accounts on Plaintiff's credit reports.

48.    Additionally, in July 2021, AES sent *at least* two (2) letters addressed to Plaintiff and sent to his mailing address in Miami, Florida.  Please see attached true and correct copies of AES's letters labeled as Composite Exhibit "E."

49.    AES's letters state "WE ARE CONTACTING YOU" and confirmed "[a]s of the date of this letter, your account is not in default, and is current."  *See* Ex. E at p. 4.

50.    As such, AES clearly possessed Plaintiff's contact information as of July 2021, possessed the ability to locate and contact Plaintiff, and in fact *did* locate and contact Plaintiff while at the same time AES communicated to Experian that AES could not locate and/or contact Plaintiff regarding the Accounts.

51.    On or about August 2, 2021, Plaintiff obtained another copy of his credit report from Experian.  Please see attached true and correct copies of relevant pages from said Experian credit report labeled as Exhibit "F."

52.    As of August 2, 2021, Defendants reported three (3) of the four (4) Accounts as "creditor recently located individual/never late."  *See* Ex. F.

53.    However, Defendants still reported "creditor cannot locate individual/never late" for one (1) of the four (4) Accounts.

54.    Additionally, all four (4) of the Accounts were still showing as "Potentially Negative" tradeline accounts despite Plaintiff's repeated disputes.

9

55.     On or about August 2, 2021, Plaintiff also obtained a copy of his credit report from Equifax Information Services LLC (hereinafter, "Equifax"), which erroneously listed three (3) of the Accounts as "customer unable to locate consumer" for the months of April 2021 and May 2021.

56.     Notably, on August 2, 2021, Plaintiff obtained a copy of his credit report from Trans Union, LLC, which accurately reported all of the Accounts as open, current, and with no late payment history or derogatory remarks about AES being unable to locate Plaintiff.

57.     On or about April 12, 2022, with the assistance of his attorneys, Plaintiff sent a letter to Equifax and Experian disputing Defendants' reporting of the AES Accounts (hereinafter, "Plaintiff's April 2022 Dispute").

58.     On or about May 5, 2022, Plaintiff received dispute results from both Experian and Equifax in response to Plaintiff's April 2022 Dispute.

59.     Finally, after repeated disputes, and after Defendants' repeated verification their erroneous reporting of the Accounts, Defendants removed the negative and derogatory information from the Accounts on Plaintiff's credit reports as maintained by Experian and Equifax.

60.     In other words, Plaintiff's Experian and Equifax reports were updated to show the Accounts as "Open/Never late" and Plaintiff's Experian report no longer showed the "Potentially Negative" remark next to the Accounts.

61.     In and after June 2021, Experian generated consumer reports regarding Plaintiff—including the inaccurate and/or false derogatory information on the

10

Accounts—and Experian published such reports to Plaintiff's current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiff's credit reports as maintained by Experian.

62.    For example, between June 2021 and November 2021, Discover Financial Services, Wells Fargo Card Services, Citibank/Citicards, Bank of America, and First Advantage/Resident Data each requested and obtained Plaintiff's Experian credit reports resulting in hard credit inquiries appearing on Plaintiff's Experian credit reports.

63.    First Advantage/Resident Data obtained Plaintiff's Experian credit report on behalf of Commodore Realty.

64.    As a result of Defendants' reporting of the Accounts, Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that he will be denied credit as a result of the erroneous and incorrect reporting of the Accounts if he needs to obtain credit in the near future, and that Plaintiff would either be denied credit or pay higher interest rates in the event he could obtain financing.

65.    In fact, in October 2021, Citibank denied Plaintiff's credit card application based on negative information included in Plaintiff's Experian credit reports.

66.    Further, in December 2021, Chase Bank reduced Plaintiff's credit line based on negative information included in his Experian credit reports.

67.    Additionally, Plaintiff did not receive the best possible terms and interest rates or was deterred from further credit applications and suffered damage to his credit

reputation as a result of Defendants' conduct.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to AES Only)**

Plaintiff re-alleges paragraphs one (1) through sixty-seven (67) as if fully restated herein and further states as follows:

68.    AES is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Experian accurately update the Accounts in Plaintiff's credit reports and credit files after re-investigating Plaintiff's repeated disputes.

69.    As described above, AES knew—and Plaintiff repeatedly advised Defendants—that Plaintiff was able to be located and was never late on the Accounts.

70.    Despite AES receiving notice of Plaintiff's repeated disputes from Experian—including the information and documents supporting Plaintiff's position that Plaintiff was able to be located and was never late—AES willfully and/or negligently failed to request that Experian update its reporting of the tradeline associated with the Accounts and continued to report inaccurate, derogatory information to Experian.

71.    More specifically, after receiving Plaintiff's First Dispute, AES reported to Experian that it was unable to locate Plaintiff.

72.    Such reporting is false and inaccurate.

73.    Subsequently, in response to Plaintiff's Second Dispute, AES continued to report to Experian that it was unable to locate Plaintiff.

74.    Furthermore, in response to Plaintiff's Third Dispute, AES continued to report to Experian that it was unable to locate Plaintiff.

75.    Rather than accurately updating its reporting of the Accounts after receiving notice of Plaintiff's repeated disputes, AES inaccurately "verified" or "updated" its derogatory reporting of the Accounts which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Experian.

76.    AES's refusal to request that Experian remove the derogatory information regarding the Accounts was intentionally, willfully, and knowingly done as AES clearly possessed knowledge that Plaintiff was able to be located and was never late on the Accounts.

77.    AES's re-investigations were not conducted in good faith.

78.    AES's re-investigations were not conducted reasonably.

79.    AES's re-investigations were not conducted using all information and documents reasonably available to AES.

80.    As a result of AES's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, received less favorable credit terms, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of AES's derogatory and

continued reporting of the Accounts, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as derogatory, negative, or adverse tradeline accounts.

81.     AES's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

82.     AES's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Experian only)**

Plaintiff re-alleges paragraphs one (1) through sixty-seven (67) as if fully restated herein and further states as follows:

83.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

84.     Experian willfully and/or negligently failed to establish or follow

reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Accounts.

85.    Further, Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Experian credit reports and credit file.

86.    Specifically, as described above, Plaintiff *repeatedly* disputed Experian's reporting of the AES Accounts by advising Experian that the Accounts should not be listed as "Creditor cannot locate individual/Never late" as Plaintiff was able to be located, which is obvious based on Plaintiff's repeated disputes.

87.    Based on Plaintiff's disputes, Experian knew—or should have known—that it was inaccurate and/or misleading to report the Accounts with a status indicating that Plaintiff was unable to be located.

88.    Despite Plaintiff's repeated disputes, Experian continued to report the Accounts with a status of "Creditor cannot locate individual/Never late," which is false and inaccurate.

89.    Despite Plaintiff's repeated disputes, Experian did not delete the information disputed by Plaintiff and did not request documents from AES in support of AES's reporting of the Accounts.

90.    Experian's reporting of the Accounts is false and evidences Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

15

91.     Following Plaintiff's multiple disputes to Experian regarding Experian's reporting of the Accounts, Experian generated consumer reports regarding Plaintiff—including the inaccurate and false derogatory information reported on the Accounts—and Experian published such reports to Plaintiff's current creditors and prospective creditors, resulting in credit inquiries on Plaintiff's credit reports as maintained by Experian.

92.     As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as derogatory, negative, or adverse tradeline accounts.

93.     Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

94.     Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i**
**(As to Experian)**

Plaintiff re-alleges paragraphs one (1) through sixty-seven (67) as if fully restated herein and further states as follows:

95.     Experian is subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments, and Section 1681i(a)(5) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

96.     Specifically, Experian willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

97.     For example, rather than conduct its own, independent re-investigation, Experian simply relied on any information provided by AES and continued to report false and misleading information with respect to the Accounts.

98.     Overall, Plaintiff's disputes provided Experian with sufficient information allowing Experian to identify its reporting errors with respect to the AES Accounts, and therefore, to correct its inaccurate reporting.

17

99.    Plaintiff's multiple disputes specifically deny that Plaintiff was unable to be located and advise that Plaintiff was never late on the Accounts and that there should be no negative information reported on the Accounts.

100.    Despite Plaintiff's repeated disputes, Experian continued to report the Accounts with a status of "Creditor cannot locate individual/Never late," which is false and inaccurate.

101.    Despite Plaintiff's repeated disputes, Experian did not delete the information disputed by Plaintiff and did not request documents from AES in support of AES's reporting of the Accounts.

102.    Experian did not request any documents from AES corroborating information furnished and verified by AES to Experian regarding Plaintiff and the Accounts in response to Plaintiff's disputes.

103.    Experian continued to inaccurately and inconsistently report the Accounts with derogatory information continuing through April 2022, causing the Accounts to be reported as derogatory, negative, or adverse accounts.

104.    As such, Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Accounts was inaccurate and failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

105.    Such reporting is false and evidences Experian's failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

106.    Experian's re-investigations of Plaintiff's disputes were not conducted

using all information reasonably available to Experian because Plaintiff's disputes themselves evidence Plaintiff's ability to be located.

107.    Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

108.    Experian's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by AES.

109.    Experian's reinvestigations were *per se* deficient by reason of these failures in Experian's reinvestigations of Plaintiff's disputes and the Accounts.

110.    As a result of Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was denied credit, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Accounts with inaccurate, negative information resulting in the Accounts being reported as derogatory, negative, or adverse tradeline accounts.

111.    Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

112.    Experian's actions in violation of 15 United States Code, Section 1681i, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys'

fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## **PRAYER FOR RELIEF**

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

      a.      Judgment against Defendants for maximum statutory damages for violations of the FCRA;

      b.      Actual damages in an amount to be determined at trial;

      c.      Compensatory damages in an amount to be determined at trial;

      d.      Punitive damages in an amount to be determined at trial;

      e.      An award of attorney's fees and costs; and

      f.      Any other such relief the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues triable by right.

## **SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE**

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

      Respectfully submitted,

      **SWIFT LAW PLLC**

      /s/ *Aaron M. Swift*
      **Aaron M. Swift, Esq., FBN 0093088**
      Jordan T. Isringhaus, Esq., FBN 0091487
      Sean E. McEleney, Esq., FBN 125561
      8380 Bay Pines Blvd.

St. Petersburg, FL 33709
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*